**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
BRUCE L. JENNINGS,            :
                             :    Civil Action No. 06-5025(JLL)
            Petitioner,      :
                             :
            v.               :    OPINION
                             :
GRACE ROGERS, et al.,        :
                             :
            Respondents.     :
```

**LINARES**, District Judge

Petitioner Bruce L. Jennings, a civilly committed person, pursuant to the Sexually Violent Predator Act ("SVPA"), <u>N.J.S.A.</u> 30:4-27.24 <u>et</u> <u>seq</u>., currently confined at the Special Treatment Unit ("STU") in Kearny, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition").  The named respondents are the Administrator of the STU, Grace Rogers, and the Attorney General of the State of New Jersey (the "Respondents").

For the reasons stated herein, the Petition is denied for lack of substantive merit and because petitioner fails to raise a colorable federal claim.

I.   BACKGROUND

A.   Procedural History[1]

On October 30, 2002, a petition for the temporary commitment of Jennings to the STU was filed by the Attorney General of New Jersey in Cumberland County.  The petition was transferred to Middlesex County on November 8, 2002, and on that same date, the Honorable Phillip Lewis Paley, J.S.C. signed a temporary commitment order.  (RE 1, Appellate Division Opinion, Feb. 22, 2005).  A review or final hearing commenced on July 21, 2003, before the Honorable Serena Perretti, J.S.C., and concluded on July 22, 2003.[2]  Judge Perretti concluded that Jennings was a

---

[1]   The procedural history is taken from the exhibits provided to this Court by the Respondents and will be designated herein as Respondents' Exhibit ("RE").

[2]   Jennings had waived his right to have his hearing held within twenty days.  He also had filed several pretrial motions, including a motion to dismiss the petition for commitment and a motion for a jury trial.  All of these pretrial motions were denied.  (RE 1).  Jennings relates that a notice of the petition for civil commitment was served on the public defender's office on November 1, 2002, and he received a copy of the notice shortly afterwards.  On November 6, 2002, he filed a pro se motion for a temporary retraining order ("TRO"), and a counter-complaint, contesting the State's attempt to further restrain him after completion of his criminal sentence.  On January 18, 2003, Petitioner again filed a pro se motion for a TRO and a counter-complaint, contesting his confinement at the STU as in violation of his constitutional rights.  On February 2, 2005, Jennings filed his third motion and counter-complaint.  All of these motions and counter-complaints allegedly were forwarded to Jennings' assigned counsel.  Jennings requested a hearing within twenty days as provided by the SVPA.  He also moved to dismiss the civil commitment petition on grounds of due process violations and ineffective assistance of counsel.  He moved for a jury trial and made in limine objections to use of his adult pre-

2

sexually violent predator ("SVP"), and issued a judgment of commitment on July 23, 2003.  A one-year review hearing date was scheduled for July 1, 2004.  (RE 1).

On or about August 14, 2003, Jennings filed a Notice of Appeal from the judgment of commitment.  In an unpublished opinion decided on February 22, 2005, the Superior Court of New Jersey, Appellate Division affirmed the judgment of commitment. (RE 1).  On or about March 24, 2005, Jennings filed a petition for certification with the New Jersey Supreme Court.  (RE 5). The New Jersey Supreme Court denied the petition by Order dated July 11, 2005.  (RE 6).

On October 11, 2005, a commitment review hearing was conducted in the New Jersey Superior Court, Law Division.  The court continued Jennings commitment in the STU and further ordered that another review be conducted within a year, on September 28, 2006.  (RE 7).  Jennings appealed this decision to the Appellate Division, which affirmed the trial court in an unpublished opinion decided on May 2, 2006.  (RE 8).

Thereafter, Jennings waived his next commitment review hearing scheduled for September 28, 2006, and filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 on or about

---

sentence report on the ground that it was hearsay.  Jennings states that all of his motions and applications were denied. (Pet. Br. at 1-3).

October 4, 2006.[3]  Respondents answered the Petition on July 20,
2007.  Jennings filed a traverse, or objections to the response,
on or about October 16, 2007.

B.  Factual History

      The facts of this case were recounted below and this Court,
affording the state court's factual determinations the
appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply
reproduce the Appellate Division's factual recitation, as set
forth in its February 22, 2005 unpublished Opinion on
Petitioner's direct appeal from his judgment of commitment:

          [Jennings] has a history of sexually violent conduct.  That
          history includes the sexual abuse of A.R. and R.R.,
          [Jennings's] nephews when they were between nine and
          thirteen years of age.  The abuse of A.R. and R.R. was the
          subject of testimony by A.R. and R.R. before Judge Arnold
          during a bail hearing for [Jennings] on the predicate
          offense for which he was found guilty and sentenced to a
          ten-year term at the Adult Diagnostic Treatment Center

_____

          [3]  Pursuant to the "prison mailbox rule," a habeas petition
is deemed filed on the date the prisoner delivers it to prison
officials for mailing, not on the date the petition is ultimately
filed with the court.  See Houston v. Lack, 487 U.S. 266, 270-71
(1988); see also Burns v. Morton, 134 F.3d 109, 112-13 (3d Cir.
1988) (applying prison mailbox rule set forth in Houston, which
dealt with filing of an appeal, to a pro se prisoner's filing of
a habeas petition).  Although the Court is unable to determine
the exact date that Jennings handed the Petition to STU officials
for mailing, Jennings signed a certification of his Petition on
October 4, 2006.  See Henderson v. Frank, 155 F.3d 159, 163-64
(3d Cir. 1988) (using date prisoner signed petition as date he
handed it to prison officials for purposes of calculating
timeliness of habeas petition).  Accordingly, this Court finds
that October 4, 2006 was the date this Petition was filed for
purposes of calculating the timeliness of the Petition, and not
the date the Petition was received by the Clerk of the Court on
October 10, 2006.

(ADTC) in Avenel.  After direct and cross-examination, Judge
Arnold found that the truthfulness of the allegations had
been proved by clear and convincing evidence.  A.R.
testified that [Jennings] sexually assaulted him between
1975 and 1979.  A.R. stated that sometimes [Jennings] would
sleep with him and would make him submit to anal
intercourse.  R.R. testified that [Jennings] made him submit
to anal intercourse on at least four occasions during 1994
and asked him to perform fellatio on him, which he refused.
R.R. stated that these assaults occurred on a karate trip,
at a local high school where [Jennings] taught karate, and
at R.R.'s home.

The predicate offense occurred on May 25, 1994.  The parents
of F.B. contacted police.  F.B. was seventeen years of age
and mentally handicapped at the time.  F.B.'s parents
informed police that F.B. had been sodomized by defendant
three days earlier.  Based on their discussions with F.B.,
they alleged that defendant asked F.B. to come to his house.
F.B. had been playing with defendant's nephew.  Defendant
took F.B. into his bedroom, pulled down his pants and
underpants and inserted his penis into his rectum.
Defendant then went into the bathroom, put "grease" on his
penis, and put his penis back into F.B.'s rectum and
ejaculated.

On May 9, 1995, defendant was charged with two counts of
second-degree sexual assault.  On April 10, 1996, defendant
was found guilty by a jury of both counts.  On November 8,
1996, Judge Arnold sentenced defendant to ten years at the
ADTC.

In February 2001, while at the ADTC, [Jennings] was placed
on Treatment Refusal (T.R.) status because he failed to
participate meaningfully in treatment.  According to the
"Progress in Treatment" paragraph of the ADTC "Termination
Report," [Jennings] was unable to control his sexual
impulses and was placed in the Restricted Activities Program
(RAP).  The report states:

    This was the direct result of information that
    [Jennings] was 'grooming' and manipulating a
    "developmentally disabled" peer into performing sexual
    activities on the wing. [Jennings] was unwilling to
    participate in any discussion of this matter and
    instead minimized his responsibility. ... A letter was
    intercepted that [Jennings] later admitted to writing,
    in which he both propositioned and threatened this

5

other inmate, while completely denying any potential
harm to the other inmate.

On October 28, 2002, Dr. Howard Gilman, a psychiatrist,
wrote at the conclusion of his clinical certificate, "In my
opinion [Jennings] has serious difficulty controlling his
sexually inappropriate impulses, and based on my evaluation
to date there is a significantly elevated risk that he will
sexually reoffend."

On July 21, 2003, defendant's commitment hearing was held.
Before the hearing, Judge Perretti addressed [Jennings']
motion to dismiss and his ineffective assistance of counsel
claim.  Defendant denied his guilt and asserted that he was
not provided notice within seven days to request a probable
cause hearing.  Judge Perretti denied defendant's request
for a dismissal.

During the commitment hearing, Dr. Michael R. McAllister
testified as an expert for the State.  He stated that he
relied on an archival review of the documents available to
him as well as his observations of [Jennings] that were made
when [Jennings] addressed the judge during the motion
hearing.  Dr. McAllister also explained that defendant
refused to be interviewed.  Dr. McAllister testified that
defendant suffered from a mental abnormality that
predisposes him to commit sexually violent acts.  He
diagnosed defendant with paraphilia and pedophilia.  Dr.
McAllister also opined that defendant had difficulty
controlling his sexually violent behavior.

Dr. Robert Carlson also testified as an expert on behalf of
the State.  As with Dr. McAllister, defendant refused to be
interviewed.  Dr. Carlson testified that defendant has a
mental abnormality or personality disorder that affects his
volitional, emotional, and cognitive capacity that
predisposes him to commit sexually violent acts.  He
diagnosed defendant with pedophilia and paraphilia not
otherwise specified (NOS).  Dr. Carlson opined that
defendant's risk to reoffend was significant and that he has
difficulty controlling his sexually violent behavior.

Judge Perretti considered the experts' testimony and, over
the objections of defense counsel, exhibits that were
admitted into evidence.  She found that defendant had a
limited ability to control his sex-offending behavior and a
high likelihood that he would recidivate if he was not
confined for additional treatment and care.  Accordingly,

Judge Perretti committed defendant for an additional year and scheduled his next commitment hearing for July 1, 2004.

(RE 1, Appellate Division Op., Feb. 22, 2005, at 5-9).

This Court also refers to the factual determinations as set forth in the Appellate Division's May 2, 2006 unpublished opinion, concerning the commitment review hearing held on October 11, 2005:

At the October 2005 review hearing before Judge Perretti, the State presented two expert witnesses: a psychologist, Brian Matthew Freedman, Psy.D. and a psychiatrist, Stanley R. Kern, M.D.  There were no defense witnesses.

In his testimony, Dr. Freedman found a strong consistency in the types of aberrant behavior in which [Jennings] has engaged; he also noted consistencies in the ages of the victims, typically between nine and seventeen years of age, many of whom had some form of cognitive or intellectual limitations and over whom [Jennings] had some sort of power.

Dr. Freedman opined that a most telling indicator of [Jennings'] tendency toward sexually-deviant behavior was [Jennings'] effort to continue to surround himself with children, working as a karate instructor and a supervisor at the YMCA, despite his prior offensive behavior. [Jennings'] placement of himself in such close proximity to children indicated to Dr. Freedman compulsivity in [Jennings'] sexual deviance.

In his own testimony, the State's psychiatrist Dr. Kern diagnosed [Jennings] with pedophilia, non-exclusive type paraphilia, and personality disorder not otherwise specified ("NOS") with anti-social traits.  He explained:

[The personality traits which trigger B.L.J. to act out show that he has] no regard for people or other people's needs.  Just the kind of individual who would say I want what I want when I want it and don't get in my way and I'll ... do what I want to do.

Dr. Kern diagnosed pedophilia and paraphilia because the deviant acts noted in the record were against two different groups: children and adolescents, as well as mentally and

physically handicapped individuals.  He further stated that
pedophilia and paraphilia NOS are not the types of diagnoses
that will simply disappear or spontaneously go away.  He
conceded that these are types of diagnoses that can be
controlled through treatment, but indicated that [Jennings]
has never participated in any such treatment at any time.
Indeed, the record before us contains several treatment
refusal notes signed by appellant.  He is classified in
Phase I of treatment within the STU, which is only the first
of four intermittent progressions of treatment within the
institution.  Dr. Kern specified that it is important for
[Jennings] to talk about and discuss his offenses in order
for him to obtain a full understanding of what he has done.

Dr. Kern further recognized that [Jennings] has engaged in
"grooming" behavior, which is signified by a deliberate act
or plan to act out upon a victim as opposed to an impulsive
act.  He further recognized [Jennings'] intentional
interaction with children by starting a karate school so
that he could be around children and victimize them.  Dr.
Kern also testified that [Jennings] had an incident while at
ADTC, when he started to groom someone.

Despite the predicate offense occurring in 1994, Dr. Kern
testified that he believes [Jennings] would continue to
engage in this kind of indecent behavior for two reasons:
(1) he has continued to offend, which is evidenced by his
grooming of another inmate at the ADTC and (2) he has
refused to engage in any kind of treatment that would help
him change his behavior.  Dr. Kern assessed [Jennings'] risk
of reoffense as "high" because he had offended numerous
times, had not done anything by way of treatment to remedy
his behavior, and, as such, if given the opportunity, would
likely offend again.

Dr. Kern pointed out that if [Jennings] would attend
treatment sessions, he could learn to control any relapse
through anger management and a better understanding of
himself and his behavior.  He opined that [Jennings']
refusal to participate in treatment programs within the STU
indicates obstinacy toward society and, in a sense, toward
anything that attempts to change his social behavior.  He
also opined that [Jennings'] outright denial of committing
any offense reflects a negativism that permeates all of his
behavior and all his interaction with those who would
attempt to help him.

(RE 8, Appellate Division Op., May 2, 2006, at 3-6).

II.  <u>STATEMENT OF CLAIMS</u>

Jennings raises the following claims for habeas relief in his Petition:

Ground One:  Provisions of the SVPA are void for vagueness and overbreadth in its enforcement as applied to Petitioner and others similarly situated, in violation of the Due Process and Fundamental Fairness Clauses of the Fourteenth Amendment.[4]

Ground Two:  The selection and determination of Petitioner as a SVP, and Petitioner's subsequent restraint and transfer to the STU, violated his rights to due process, equal protection and fundamental fairness, in violation of the Fourteenth Amendment.

Ground Three: Petitioner was denied the right to notice and a fair hearing and the right to counsel, in violation of his right to due process.

Ground Four:  Petitioner was denied effective assistance of trial counsel as guaranteed under the Sixth Amendment to the United States Constitution.

Ground Five:  Petitioner was denied the effective assistance of appellate counsel.

----

[4]  Jennings also refers to violation of the New Jersey State Constitution.  As this relates to state law, as opposed to a federal constitutional claim, this Court will address only allegations of federal constitutional deprivations.  Petitioner's state law claims will are dismissed for failure to state a colorable federal claim.

Ground Six:   The statutory penalties and extended imprisonment under the SVPA, as applied to Petitioner, violates Petitioner's right against compulsory self-incrimination, retaliation, ex post facto laws and double jeopardy.

Ground Seven:  Petitioner was denied a fair civil commitment hearing.

The State contends that the Petition should be denied for lack of substantive merit.  The State also argues that the Petition is time-barred, and that Petitioner's claims of error with regard to the proceedings prior to the October 2005 commitment review hearing are moot.

### III.  STATUTE OF LIMITATIONS ANALYSIS

Respondents argue that the Petition should be dismissed as time-barred under 28 U.S.C. § 2244(d).  The limitation period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d), which provides in pertinent part:

(1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; ...

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

10

A state-court judgment becomes "final" within the meaning of § 2244(d)(1) at the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.

This Court finds that Jennings timely filed his Petition. Jennings filed an appeal from the July 2003 judgment of conviction, and the Appellate Division affirmed in a February 22, 2005 opinion.  The New Jersey Supreme Court denied Jennings' petition for certification on July 11, 2005.  Allowing Petitioner the 90 days for filing a petition for certiorari in the United States Supreme Court, Jennings had one year from October 11, 2005, i.e., October 11, 2006, within which to file this habeas petition to be timely under 28 U.S.C. § 2244(d)(1).  As set forth above, Jennings caused the Petition to be filed on October 4, 2006.  Consequently, the habeas petition is timely, and this Court rejects Respondents' contention that the Petition should be dismissed as time-barred.

IV.   STANDARD OF REVIEW FOR HABEAS PETITION

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se habeas petition and any supporting

submissions must be construed liberally and with a measure of
tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998).
Because Petitioner is a pro se litigant, the Court will accord
the Petition the liberal construction intended for such
petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective
Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas
matters must give considerable deference to determinations of the
state trial and appellate courts.  See 28 U.S.C. § 2254(e);
Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122
S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.
1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section
2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim -
>
> > (1)  resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an
> > unreasonable determination of the facts in light
> > of the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme
Court explained that subsection (d)(1) involves two clauses or

conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id</u>.

Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case."  <u>Id</u>. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000) (citing <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v. Brennan</u>, 528 U.S. 824 (1999)).

Consonant with <u>Williams</u>, the Third Circuit has held that

§ 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims. First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims. See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891. If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court moves to the second step of the analysis under § 2254(d)(1) – whether the state court unreasonably applied the Supreme Court precedent in reaching its decision. Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result. Id. AEDPA prohibits such de novo review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable. Id. In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v.

14

_Janecka_, 312 F.3d 597, 605-06 (3d Cir. 2002), _cert_. _denied_, 538 U.S. 1000 (2003)(_citing_ _Weeks v. Angelone_, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but not adjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  _See_ _Hameen v. State of Delaware_, 212 F.3d 226, 248 (3d Cir. 2000), _cert_. _denied_, 532 U.S. 924 (2001); _Purnell v. Hendricks_, No. 99-1651, 2000 WL 1523144, at *6 n.4 (D.N.J. Oct. 16, 2000).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  _See_ _Duncan_, 256 F.3d at 196.  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  _Mastracchio v. Vose_, 274 F.3d 590, 598 (1st Cir. 2001).

V.   THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, _N.J.S.A._ 30:4-27.24 _et seq._, provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP").  _See_  _N.J.S.A._ 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, _N.J.S.A._ 30:4-27.34(a); and the New Jersey Department of Human

Services ("DHS") provides for their treatment.  <u>N.J.S.A.</u> 30:4-27.34(b).  The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with  of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators."  <u>N.J.S.A.</u> 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  <u>N.J.S.A.</u> 30:4-27.25.  The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  <u>Id</u>.  The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

<u>N.J.S.A.</u> 30:4-27.26(b).

When it appears that a person may meet the criteria of a SVP, the "agency with jurisdiction"[5] must provide notice to the

---

[5]  An "agency with jurisdiction" refers to the agency which releases a person who is serving a sentence or a term of

New Jersey Attorney General ninety (90) days, or as soon as practicable, before the anticipated release of a person who has been convicted of a sexually violent offense.  N.J.S.A. 30:4-27.27(a)(1).  If the Attorney General determines that public safety warrants the involuntary civil commitment of a SVP, the Attorney General may initiate a court proceeding by presenting to a judge for immediate review the certification of two doctors, one of whom must be a psychiatrist, who have examined the person no more than three days before the petition for commitment.  N.J.S.A. 30:4-27.28; 30:4-27.26; see also In the Matter of Commitments of M.G. and D.C., 331 N.J. Super. 365, 373 (App. Div. 2000).  Once these documents are received by the court, the court must determine whether there is probable cause to believe that the person is a SVP.  N.J.S.A. 30:4-27.28(f).  If the court so finds, the court will issue an order authorizing temporary commitment to a secure facility designated for the care, control and treatment of SVPs pending a final hearing, and a final hearing date will be scheduled within twenty (20) days of the temporary commitment.  N.J.S.A. 30:4-27.28(g) and 30:4-27.29(a).  The SVPA mandates that the person deemed to be a SVP shall not be released from confinement before the final hearing.  N.J.S.A. 30:4-27.28(g).

---

confinement.  This term includes the NJDOC.  N.J.S.A. 30:4-27.26.

17

The person deemed to be a SVP and his/her counsel shall be provided with the following at least ten (10) days before the final hearing: (1) copies of the clinical certificates and supporting documents, (2) the temporary court order, and (3) a statement of the SVP's rights at the final hearing.[6] N.J.S.A. 30:4-27.30(a).

At the final hearing, the court must find by clear and convincing evidence that the SVP is in need of continued involuntary commitment to issue an order of involuntary commitment. N.J.S.A. 30:4-27.32(a). The SVP is not permitted to appear at the hearing without counsel, and he will be appointed counsel if indigent. N.J.S.A. 30:4-27.29(c). The psychiatrist on the SVP's treatment team who has conducted a personal examination of the SVP within five (5) days of the final hearing shall testify at the hearing as to the clinical basis for the alleged SVPs' involuntary commitment. N.J.S.A. 30:4-27.30(b). Other members of the person's treatment team and other witnesses with relevant information, offered by the SVP or by the Attorney General, are permitted to testify at the final hearing. Id.

---

[6] A SVP is afforded the following rights at his or her court hearing: (1) the right to be represented by counsel or, if indigent, by appointed counsel; (2) the right to be present at the court hearing unless the court determines that because of the person's conduct at the court hearing the proceeding cannot reasonably continue while the person is present; (3) the right to present evidence; (4) the right to cross-examine witnesses; and (5) the right to a hearing in camera. N.J.S.A. 30:4-27.31.

18

Those persons committed under the SVPA shall receive annual review hearings.  N.J.S.A. 30:4-27.35.  A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

VI.  DISCUSSION OF CLAIMS

A.  Petition is Not Rendered Moot by Subsequent Review Hearing

Respondents argue that Jennings lacks standing to bring this Petition pursuant to the mootness doctrine because Petitioner is no longer in custody under the initial SVPA commitment order, but instead, is confined pursuant to a second commitment order issued as the result of Jennings' October 2005 review hearing.

This Court rejects Respondents' contention.  Although Jennings' original one-year term of civil commitment under the SVPA has expired, his Petition challenging his commitment under the SVPA is not rendered moot because his subsequent commitment order under the SVPA depends largely on the legality of the original SVPA commitment.  See Rose v. Mayberg, 454 F.3d 958, 960, n.1 (9th Cir. 2006), cert. denied, 127 S. Ct. 1271 (2007).  This Court concludes that even if each SVPA re-commitment proceeding is a separate and distinct civil action, as Respondents here contend, the federal court may still address a habeas petition challenging the first SVPA commitment in order to ensure that the claim is fully litigated.  See Hubbart v. Knapp, 379 F.3d 773, 777-78 (9th Cir. 2004), cert. denied, 543 U.S. 1071

(2005).  Accordingly, this Court will review the claims raised by
Jennings in the Petition.

B.  The SVPA Is Not Overbroad or Vague (Ground One)

In his first ground for habeas relief, Jennings asserts that
the New Jersey SVPA is unconstitutional because it is overbroad
and should be declared void for vagueness.  Specifically, he
contends that the policies used to determine or select him – and
others similarly situated – for civil commitment are
unconstitutionally vague because they do not give fair notice of
what constitutes (a) prohibited conduct or (b) a characterization
as "dangerous".  Jennings claims that the statute fails to define
or clarify its scope, and its application is arbitrary and
biased.[7]

Jennings raised this claim in his appeal from the judgment
of commitment.  In the February 22, 2005 Opinion, the Appellate
Division held:

> The [SVP] Act is quite detailed, encompassing fourteen
> pages.  It sets forth the application procedures and
> standards to involuntary commit an individual.  N.J.S.A.
> 30:4-27.28 to - 27.32.  The Act also designates spheres of
> responsibility and authority to the Department of
> Corrections as well as to the Division of Mental Health
> Services in the Department of Human Services.  N.J.S.A.
> 30:4-27.34.  In fact, the Act is similar to Kansas' SVPA
> that was considered by the United States Supreme Court and
> modeled after by New Jersey.  Kansas v. Hendricks, 521 U.S.

---

[7]  For instance, Jennings alleges that the words "when it
appears" in the statute provides no ascertainable standard by
which to measure the decision of the agency with jurisdiction to
seek civil commitment under the SVPA.

346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).  Additionally, the legislative intent provides insight as to how to apply the statute.  <u>N.J.S.A.</u> 30:4-27.25.  The Act is neither vague, ambiguous nor overbroad in its application.

(RE 1, Appellate Division Op., Feb. 22, 2005, at 28-29).

This Court likewise finds that the New Jersey SVPA is not vague, ambiguous or overbroad.  The Act clearly defines a SVP as

a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

<u>N.J.S.A.</u> 30:4-27.26.

Furthermore, each term relevant to a finding that a person is a SVP is defined under the SVPA.  In particular, "sexually violent offense" is defined as:

(a) aggravated sexual assault; sexual assault; aggravated criminal sexual contact; kidnapping pursuant to subparagraph (b) of paragraph (2) of subsection c. of <u>N.J.S.</u> 2C:13-1; criminal sexual contact; felony murder pursuant to paragraph (3) of <u>N.J.S.</u> 2C:11-3 if the underlying crime is a sexual assault; an attempt to commit any of these enumerated offenses; or a criminal offense with substantially the same elements as any offense enumerated above, entered or imposed under the laws of the United States, this State or another state; or

(b) any offense for which the court makes a specific finding on the record that, based on the circumstances of the case, the person's offense should be considered a sexually violent offense.

<u>N.J.S.A.</u> 30:4-27.26(a), (b).

The term "mental abnormality" also is defined as "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." N.J.S.A. 30:4-27.26.  The phrase "likely to engage in acts of sexual violence" is defined further to mean that "the propensity of a person to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of others."  Id.

Moreover, the New Jersey Supreme Court has held that the SVPA is not impermissibly overbroad.  In In re Commitment W.Z., 173 N.J. 109 (2002), the state court found that the inclusion of both emotional and cognitive impairments in the definition of "mental abnormality" does not make the SVPA overbroad but rather, clarifies ways in which a mental abnormality may manifest itself; the SVPA appropriately limits its application or reach to convicted sex offenders who lack adequate control over their behavior and suffer from a mental abnormality or personality disorder which make them likely to reoffend in the future.  W.Z., 173 N.J. at 121-130.

Therefore, based on the clear meaning ascribed to the terms "sexually violent predator," "sexually violent offense" and "mental abnormality," and because the language of New Jersey's SVPA is "virtually identical" to the language of the Kansas SVPA challenged and upheld in Kansas v. Hendricks, 521 U.S. 346

(1997), see W.Z., 173 N.J. at 121, the New Jersey SVPA is not unconstitutionally overbroad or vague.

Moreover, to be adjudicated a SVP under the SVPA, the State must prove that the sex offender has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he will not control his sexually violent behavior and will reoffend.  In re Civil Commitment of A.H.B., 386 N.J. Super. 16 (App. Div. 2006), certif. denied, 188 N.J. 492 (2007).  Thus, the person must have been convicted of a predicate offense (N.J.S.A. 30:4-27.26(a)) in the past, and the State must show by clear and convincing evidence that the person currently meets the definition of a SVP and currently presents a high likelihood of committing sexually violent acts if released.  In re Commitment of P.Z.H., 377 N.J. Super. 458, 464 (App. Div. 2005).  See also N.J.S.A. 30:4-27.28(a)(the Attorney General shall submit a clinical certificate[8] completed by a psychiatrist at the facility where the person is a patient and the screening certificate which authorized admission of the person to the facility).

---

[8]  A "clinical certificate for a sexually violent predator" is defined as a form prepared by the Division of Mental Health Services in the DHS and completed by a psychiatrist or other physician who has examined the person subject to commitment within three days of presenting the person for admission to a facility for treatment, and which states that the person is a SVP in need of involuntary commitment.  The form also shall state the specific facts upon which the examining physician has based that conclusion.  N.J.S.A. 30:4-27.26.

23

___Consequently, this Court rejects Petitioner's contention that the New Jersey SVPA is vague or overbroad, and finds that the statute does not violate the Fourteenth Amendment's due process clause or the fundamental fairness doctrine, as argued by Jennings.  Furthermore, because the New Jersey SVPA was modeled after the Kansas SVPA, which was considered by the United States Supreme Court to be constitutionally sound, see Hendricks, 521 U.S. 346, the New Jersey SVPA likewise passes constitutional muster.[9]  Accordingly, this claim is denied for lack of merit.

C.  Lack of Fair Notice and Counsel (Grounds Two & Three)

Jennings next argues that the selection and determination of him as a SVP, and his subsequent restraint and transfer to the STU, violated due process, fundamental fairness and equal protection, in violation of the Fourteenth Amendment.  (Pet. Br. at Ground Two).  Jennings states that he was restrained and transferred to the STU only two days before his criminal sentence

---

[9]  Jennings argues in his traverse that the New Jersey Appellate Division misapplied the standards established by the United States Supreme Court in Turner v. Safley, 482 U.S. 78 (1987) and Papachristou v. City of Jacksonville, 405 U.S. 156 (1972).  He contends that the state court's decision is "contrary to" and involves an "unreasonable application" of clearly established federal law.  This Court finds no merit to this argument.  The New Jersey Appellate Division expressly found that the New Jersey SVPA was essentially identical to the Kansas SVPA reviewed by the United States Supreme Court in Kansas v. Hendricks, 521 U.S. 346 (1997).  Therefore, the Appellate Division's determination was consistent, with and a reasonable application of, clearly established federal law as set forth by the Supreme Court in Hendricks.

was to expire.  He was strip-searched and placed in segregation
for two days, was denied access to an attorney, and contact with
his family.  Jennings also alleges that he did not receive notice
or a hearing beforehand.  He relates that the New Jersey Attorney
General filed petitions for his temporary involuntary civil
commitment on October 31, 2002 and November 8, 2002.  The first
petition was served on Jennings on November 1, 2002, one day
after it was filed.  He admits that he received notice of the
second petition on the same day it was filed, November 8, 2002,
when a social worker informed him of the petition.  (Pet. Br. at
Ground Three).

    Based on the facts as admitted by Jennings in the Petition,
there is no basis for his claim that he did not receive fair
notice of the petition for his temporary civil commitment.
Rather, it appears that Jennings may be arguing that he was
denied due process and equal protection because he was not first
released from prison at the expiration of his sentence before
being taken into custody at the STU, or that he did not have a
hearing prior to being selected for civil commitment under the NJ
SVPA and restrained at the STU.

    This claim was raised in Jennings' direct appeal from the
judgment of commitment, and rejected by the Appellate Division,
on the following grounds;

        Defendant asserts that he was denied due process protections
        by not being released upon completion of his sentence and

that he was targeted for civil commitment as a means of
retaliation for appealing his conviction.  He asserts an
equal protection violation by the fact that other inmates in
similar situations are not civilly committed.

Commitment proceedings for sex offenders under the SVPA are
subject both to the due process and equal protection clauses
of the Fourteenth Amendment.  In re Civil Commitment of
D.L., 351 N.J. Super. 77 (App. Div. 2002)(holding that a
commitment to a mental hospital produces a massive
curtailment of liberty and requires due process protections
such as appointed counsel on appeal and a free transcript
for an indigent defendant), certif. denied, 179 N.J. 373
(2004).

Pursuant to N.J.S.A. 30:4-27.28, the State, by initiating
the commitment proceedings, was seeking to protect the
public from an alleged sexually violent predator.  There is
nothing in this record that would indicate that the State
was retaliating against defendant for filing an appeal.
Rather, the record evidences that he was accorded due
process.  For example, defendant was accorded counsel who
argued vigorously on his behalf.  Additionally, his motions,
with the assistance of counsel, were heard and considered by
Judge Perretti before the commencement of the commitment
hearing.  Finally, counsel raised a number of evidential
objections and conducted direct and cross-examination of the
witnesses during the hearing.  Defendant's rights were
protected.

Defendant's equal protection claim is also without merit.
To be within the class of persons who may be subjected to
involuntary commitment under the SVPA, one must be likely to
engage in acts of sexual violence.  W.Z., supra, 173 N.J. at
127.  The Act also sets forth the criteria to, in effect,
"screen" confined individuals to determine if involuntary
commitment should be sought, depending upon whether or not
an individual falls within the definition of a "sexually
violent predator[.]"  N.J.S.A. 30:4-27.26.

In this case, defendant's sexual history reflects a history
of sexual violence.  Defendant clearly fits within the
category of cases for which involuntary civil commitment is
sought.  Defendant, under the statute, is entitled to a
number of procedural and substantive safeguards that are in
place.  N.J.S.A. 30:4-27.28 to -27.31.  There is no
constitutional violation evident in this record.

(RE 1, Appellate Division Op., Feb. 22, 2005, at 29-31.

"Due process requires that the nature of commitment bear
some reasonable relation to the purpose for which the individual
is committed." Foucha v. Louisiana, 504 U.S. 71, 79 (1992)
(citing Jones v. United States, 463 U.S. 354, 368 (1983); Jackson
v. Indiana, 406 U.S. 715, 738 (1972)).  In addition, "due process
requires that the conditions and duration of confinement under [a
sexual predator commitment act] bear some reasonable relation to
the purpose for which persons are committed." Selig v. Young,
531 U.S. 250, 265 (2001) (citing Foucha, 504 U.S. at 79;
Youngberg v. Romeo, 457 U.S. 307, 324 (1982); Jackson, 406 U.S.
at 738).

It is clear from the Appellate Division's decision that
Jennings was not denied any due process or equal protection in
the determination that he should be reviewed for civil commitment
under the SVPA.  The Appellate Division found that Jennings met
the criteria under the SVPA for selection for civil commitment
based on his sexually violent criminal history.  Moreover,
Jennings admits that he received notice of the petition for his
civil commitment, and the record confirms that he had counsel
representing him during the process.  The Appellate Division's
decision is neither contrary to nor an unreasonable application
of the applicable federal law, nor is the decision based upon an
unreasonable determination of the facts.  Accordingly, Jennings
is not entitled to relief on Ground Two of his Petition.

With respect to Ground Three, it would appear that Jennings is arguing that he was denied due process protections afforded prisoners in prison disciplinary proceedings, namely, the right to notice and counsel.  As noted by Respondents, Jennings' arguments are premised on his misconception that the SVPA is a penal statute.  Consequently, Jennings contends that he is entitled to the due process protections set forth in Wolff v. McDonnell, 418 U.S. 539 (1974).  These due process protections include notice of charges, right to counsel, right to confrontation and cross-examination, etc.

Jennings also relies on Vitek v. Jones, 445 U.S. 480 (1980). In Vitek, the Supreme Court held that (1) a sentenced prisoner has a liberty interest arising from the Due Process Clause in avoiding involuntary civil commitment to a mental institution during the term of his sentence and (2) due process requires notice and an evidentiary hearing before a prisoner is transferred to a mental institution.  Vitek, 445 U.S. at 494. The Court determined that the following due process requirements satisfy the minimum requirements of due process:[10]

    A.  Written notice to the prisoner that a transfer to a
    mental hospital is being considered;

    B.  A hearing, sufficiently after the notice to permit the
    prisoner to prepare, at which disclosure to the prisoner is
    made of the evidence being relied upon for the transfer and
    at which an opportunity to be herd in person and to present
    documentary evidence is given;

_____

    [10]  The Supreme Court followed the due process requirements
that had been ordered by the district court with the exception of
the right to counsel.

C.  An opportunity at the hearing to present testimony of witnesses by the defense and to confront and cross-examine witnesses called by the state, except upon a finding, not arbitrarily made, of good cause for not permitting such presentation, confrontation, or cross-examination;

D.  An independent decisionmaker;

E.  A written statement by the factfinder as to the evidence relied on and the reasons for transferring the inmate;

F.  Availability of legal counsel, furnished by the state, if the inmate is financially unable to furnish his own; and

G.  Effective and timely notice of all the foregoing rights.

Vitek, 445 U.S. at 494-95.

New Jersey courts have held, however, that while due process considerations require notice to the person before transfer and an opportunity to present a written challenge to the documents submitted to the court for commitment proceedings under the SVPA (see N.J.S.A. 30:4-27.26), due process does not require a pre-transfer evidentiary hearing.  In re Commitment of M.G. and D.C., 331 N.J. Super. 365, 383-84 (App. Div. 2000).  The "notice and right of an alleged SVP to challenge the documents submitted to the court need not involve testimony nor resolve crucial evidentiary or credibility questions.  These issues can be addressed at the twenty-day hearing following the commitment." Id. at 383.  The Superior Court continued:

> The probable cause hearing, which we conclude satisfies due process requirements, shall be limited to an inquiry as to whether the documentation provided to the judge satisfies the statutory requirements for commitment.  We recognize that in many cases there will be no preliminary challenge, and any appropriate challenge will be reserved until the twenty-day post-commitment hearing.

Id. at 383-84 (citations omitted).

Here, Jennings claims that he was denied the right to
challenge the probable cause for his temporary commitment before
his final commitment hearing.  He contends that he should have
been allowed a probable cause hearing before his transfer to the
STU, but he does not articulate any basis for challenging the
probable cause documentation for his commitment.  Jennings raised
this issue in his direct appeal to the Appellate Division.  The
Appellate Division held:

> Judge Perretti determined that even if a probable cause
> hearing were held, the arguments that defendant intended to
> advance were either irrelevant or immaterial.  Defendant
> sought to raise issues relating to his denial of culpability
> for the predicate offense for which he was convicted.  Judge
> Perretti found that those issues were not proper for
> adjudication in a probable cause hearing.
>
> . . .
>
> Judge Perretti correctly determined that, "[M.G.] is a very
> limited case and the issues properly raisable have not been
> mentioned among those issues which would have been sought to
> be tried."  We are satisfied that the failure to give B.L.J.
> notice that would have enabled him to request a probable
> cause hearing constituted harmless error.  There would have
> been no right to contest his underlying conviction at a
> probable cause hearing.

(RE 1, Appellate Division Op., Feb. 22, 2005, at 10-11).

This Court finds that Jennings has not demonstrated a
constitutional violation by the lack of prior notice and probable
cause hearing.  He received sufficient notice to prepare a
defense for his commitment hearing.  Under federal law, the
procedures used by New Jersey in identifying and detaining SVPs
have withstood constitutional challenges.  See Hendricks, 521

U.S. 346; <u>see also</u> <u>Greenfield v. New Jersey Dep't of Corr.</u>, 382 N.J. Super. 254, 263 (App. Div. 2006)(finding that the SVPA "provides an affected individual the opportunity to be heard 'at a meaningful time in a meaningful way.' The Constitution requires no more.").

Moreover, Jennings has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Nor has Petitioner demonstrated a decision by the state courts that was based on an unreasonable determination of the facts in light of the evidence presented in state court. Therefore, Jennings is not entitled to relief on these due process claims.[11]

D. <u>Double Jeopardy and Ex Post Facto Claims</u>

In Ground Six of his Petition, Jennings contends that the SVPA violates the Double Jeopardy and <u>Ex</u> <u>Post</u> <u>Facto</u> Clauses of the United States Constitution. Again, these arguments by Petitioner are premised on his misapprehension that the SVPA is a penal statute. Generally, Jennings alleges that the extended

───────────────

[11] This Court notes that Petitioner's claim that he was denied the right to counsel at a probable cause hearing does not state a cognizable federal constitutional claim. As referenced in <u>Vitek</u>, the Supreme Court did not provide for the automatic appointment of counsel at the probable cause stage in civil commitment proceedings. <u>See</u> <u>Vitek</u>, 445 U.S. at 496. Furthermore, Jennings did have representation by counsel during the final commitment proceedings. Therefore, there is no basis for his claim that he was denied the right to counsel.

confinement and "penalties"[12] imposed under the SVPA, as applied to him, violates both the Double Jeopardy and Ex Post Facto clauses.

Jennings raised these claims on his direct appeal from the commitment order.  The Appellate Division rejected his arguments, finding that:

> As for defendant's ex post facto and double jeopardy claims, those are also without merit.  As the Supreme Court explained in Hendricks, there is no double jeopardy or ex post facto violation of Kansas' SVPA, which New Jersey has modeled, because a defendant's commitment is civil, not criminal, in nature.  Hendricks, supra, 521 U.S. at 347-48, 117 S.Ct. at 2075-76.  Therefore, defendant's involuntary confinement cannot be found punitive under either claim. Selig v. Young, 531 U.S. 250, 121 S.Ct. 727, 148 L. Ed.2d 734 (2001); [In re Civil Commitment of J.H.M., 367 N.J. Super. 559], 608 [(App. Div. 2003), certif. denied, 179 N.J. 312 (2004)].  Commitment may continue as long as necessary in order to ensure the public that defendant's "mental abnormality no longer causes him to be a threat to others." Hendricks, supra, 521 U.S. at 363, 117 S. Ct. at 2083. However, there are safeguards in place:

>> [C]ommitment pursuant to [the] SVPA is only potentially indefinite, with one year being [t]he maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding."  If the State wishes to continue to hold the committee for additional time, the State must again prove "by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator."

>> [J.H.M., supra, 367 N.J. Super. at 611 (citations omitted).]

---

[12]  These "penalties" appear to refer to his loss of institutional privileges and loss of credits against his criminal sentence while he was serving his state criminal sentence because he declined to admit guilt or disclose additional information about his predicate offense in the Sex Offender Treatment Program at the Adult Diagnostic and Treatment Center ("ADTC") in Avenel, New Jersey.  As a result of this refusal to cooperate, Jennings alleges that he was referred for commitment as a SVP.

    There is no evidence that defendant's Fifth, Eighth or
    Fourteenth Amendment rights were violated.

(RE 1, Appellate Division Op., Feb. 22, 2005, at 32-33).

    The Double Jeopardy Clause of the Fifth Amendment provides
that no person shall "be subject for the same offense to be twice
put in jeopardy of life or limb." U.S. Const. amend. V.  This
guarantee is applicable to the States through the Fourteenth
Amendment. Benton v. Maryland, 395 U.S. 784, 794 (1969).

    Three separate guarantees are "embodied in the Double
Jeopardy Clause: It protects against a second prosecution for the
same offense after acquittal [or mistrial], against a second
prosecution for the same offense after conviction, and against
multiple punishments for the same offense." Justices of Boston
Mun. Court v. Lydon, 466 U.S. 294, 306-07 (1984) (citing Illinois
v. Vitale, 447 U.S. 410, 415 (1980)).  Thus, the threshold
question under a double jeopardy analysis is whether the
challenged provision imposes "punishment". Artway v. Attorney
General of State of N.J., 81 F.3d 1235, 1253 (3d Cir. 1996).

     The Ex Post Facto Clause prohibits the retroactive
application of a law that "inflicts a greater punishment, than
the law annexed to the crime, when committed." Calder v. Bull, 3
U.S. (3 Dall.) 386, 390 (1798).  Consequently, the Ex Post Facto
Clause cannot be violated without the imposition of punishment,
similar to the Double Jeopardy Clause.

    Thus, both the double jeopardy and ex post facto challenges
asserted by Jennings here require an evaluation of whether the

33

New Jersey SVPA constitutes "punishment". Toward this end, Jennings purports to equate the restrictive conditions imposed by his restraint at the STU as an intent to punish SVPA committees like convicted prisoners.

Because "punishment" is generally presumed to have the same meaning for purposes of both constitutional provisions, the threshold issue for this Court for purposes of evaluating both claims is whether the challenged measure, here, the New Jersey SVPA, constitutes punishment. See Hendricks, 521 U.S. 346 (applying single "punishment" analysis for both clauses); see also E.B. v. Verniero, 119 F.3d 1077, 1092 (3d Cir. 1997).

In Hendricks, the Supreme Court held that the Double Jeopardy and Ex Post Facto clauses of the U.S. Constitution apply only to criminal statutes where punishment is imposed. 521 U.S. at 361. The Supreme Court stated:

> We must initially ascertain whether the legislature meant the statute to establish 'civil' proceedings . . . . [W]e will reject the legislature's manifest intent only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'

Id. (citations omitted). Thus, constitutional prohibitions against retroactive punishment can only apply to criminal legislation. Id.; Seliq, 531 U.S. 250 (holding that a state's legislative and judicial determination that its sexually violent predator statute was civil rather than criminal precluded double

jeopardy and ex post facto challenges by petitioners committed under said statute).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington statutes that were examined and upheld by the United States Supreme Court in Hendricks and Selig, respectively. Like those state statutes, the New Jersey SVPA does not establish criminal proceedings. Further, New Jersey has formally determined that the SVPA is a civil enactment, satisfying the requirements of Hendricks and Selig. See N.J.S.A. 30:4-27.24 (New Jersey Assembly Appropriations Committee Statement stating that the SVPA "establishes a civil procedure for the involuntary commitment of sexually violent predators").

The New Jersey Supreme Court likewise determined that the New Jersey SVPA is clearly civil and non-punitive. See W.Z., 173 N.J. at 119-21. In W.Z., the New Jersey Supreme Court found that the SVPA was enacted by the New Jersey State Legislature to protect the citizens of New Jersey and provide treatment for those suffering from mental abnormalities, which may cause them to commit additional acts of sexual violence and "in recognition of the need for commitment of those sexually violent predators who pose a danger to others should they be returned to society." Id. The New Jersey Supreme Court also noted that the SVPA requires the State to provide housing, separate from the prison population, treatment, and regular review hearings under N.J.S.A. 30:4-27.34. Id. Further, "[t]he SVPA is virtually identical to

the language of the Kansas SVPA challenged [and upheld] in
Hendricks, and follows the pattern for such legislation that has
been enacted by numerous other states."  Id. at 121.

Therefore, based on the Supreme Court's ruling in Hendricks,
and the New Jersey Supreme Court's holding in W.Z., the New
Jersey SVPA is a civil statute, on its face.  These findings
preclude the application of a double jeopardy or ex post facto
challenge.

Moreover, in Seliq, the Supreme Court ruled that an "as
applied" or "in effect" argument, as asserted by Jennings in this
case, cannot alter the conclusive legislative and judicial
determination that a civil commitment statute similar to the New
Jersey SVPA sets forth a civil, not criminal, commitment scheme,
and precluded an "as applied" or "in effect" double jeopardy or
ex post facto challenge.  531 U.S. at 263.  Thus, any assertion
by Jennings that this Court should look beyond the face of the
SVPA to the implementation of the SVPA is inconsistent with the
Supreme Court's holding in Hudson v. United States, 522 U.S. 93
(1997), wherein the Court held that the determination of whether
a statute is criminal or civil must be done through an
examination of the statute "on its face."  522 U.S. at 101.  As
stated above, on its face, the New Jersey SVPA is civil.

Accordingly, this Court finds that the state court's
determination in rejecting Jennings' double jeopardy and ex post
facto challenges to the SVPA is neither contrary to nor an

unreasonable application of the applicable federal law.  Habeas relief on these claims is denied for lack of merit.

E.   Retaliation/Compulsory Self-Incrimination Claim

Also in Ground Six, Jennings contends that his right against self-incrimination, protected under the Fifth Amendment, was violated because he was referred for commitment under the SVPA in "retaliation" for his refusal to admit his guilt or disclose additional information concerning his predicate offense while he was in the Sex Offender Treatment Program ("SOTP") during his incarceration.  This Court construes Petitioner's claim as alleging that his refusal to participate in the SOTP cannot be used as a basis to commit him under the SVPA because it violates his Fifth Amendment right against self-incrimination.

It does not appear that Jennings raised this precise Fifth Amendment claim in his state court appeals from the first and second commitment order.  Rather than dismiss the Petition as "mixed", for bringing exhausted and unexhausted claims for habeas relief, this Court will deny this claim on the merits, pursuant to 28 U.S.C. § 2254(b)(2).

The Self-Incrimination Clause of the Fifth Amendment to the U.S. Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  The Self-Incrimination Clause applies to the States through the Fourteenth Amendment.  Malloy v. Hogan, 378 U.S. 1, 6 (1964).  The Clause speaks of "compulsion," United States v. Monia, 317 U.S. 424, 427

(1943), and the U.S. Supreme Court has emphasized that the "constitutional guarantee is only that the witness not be compelled to give self-incriminating testimony," United States v. Washington, 431 U.S. 181, 188 (1977).

In McKune v. Lile, 536 U.S. 24 (2002), a sharply-divided Supreme Court held that the Fifth Amendment right against compelled self-incrimination is not violated by a prison sexual-abuse treatment program which imposes loss of various prison privileges for failure to participate in a counseling program that requires the inmates to complete an unprivileged sexual history form which details all prior sexual activities, regardless of whether such activities constitute uncharged criminal offenses.  In upholding the constitutionality of the treatment program, both the plurality and the concurring Justices noted that failure to participate did not affect eligibility for good time credits or parole.  See 536 U.S. at 38 (Kennedy, J., plurality), 52-53 (O'Connor, J., concurring).

Relying upon McKune, the Superior Court of New Jersey, Appellate Division, invalidated a New Jersey statute[13] to the

---

[13] N.J.S.A. 2C:47-8 provides, in pertinent part:

> a term of imprisonment imposed on a person confined to the Adult Diagnostic and Treatment Center ... shall not be reduced by progressive time credits or credits for diligent application to work and other institutional assignments for any year or fractional part of a year if the person failed to fully cooperate with all treatment offered to him during that time period.

extent it permitted good time credits to be withheld or revoked based upon a prisoner's refusal to disclose information about past events for which he could face subsequent prosecution. Bender v. New Jersey Dep't of Corr., 356 N.J. Super. 432 (App. Div. 2003).  One year later, the Appellate Division expanded upon Bender, holding that a prisoner retains his privilege against self-incrimination until he has exhausted the direct appeal process from his criminal conviction, that a prisoner is not required to discuss the crimes for which he was convicted until his petition for certification is denied by the Supreme Court of New Jersey, and that good time credits may not be withheld or revoked based upon the refusal to disclose information about the crime of conviction until the direct appeals are exhausted. Lewis v. Dep't of Corr., 365 N.J. Super. 503 (App. Div. 2004).

In Chavez v. Martinez, 538 U.S. 760 (2003), the Supreme Court indicated that violations of the prophylactic rules safeguarding the right against compelled self-incrimination do not amount to actual constitutional violations as required for civil liability under § 1983.  The Court of Appeals for the Third Circuit has held in a non-precedential opinion that there is no Fifth Amendment violation in forcing a prisoner to choose between maintaining his innocence (with respect to the crime of which he was convicted) and participating in a treatment program necessary

for parole recommendation.  See Thorpe v. Grillo, 80 Fed.Appx. 215(3d Cir. 2003) (unpubl.), cert. denied, 542 U.S. 924 (2004).[14]

The Fifth Amendment right against self-incrimination remains available to a prisoner despite his conviction.  See Minnesota v. Murphy, 465 U.S. 420, 426 (1984).  However, "[i]t is well established that the privilege protects against real dangers, not remote and speculative possibilities."  Zicarelli v. New Jersey State Comm'n of Investigation, 406 U.S. 472, 478 (1972).  "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination."  Marchetti v. United States, 390 U.S. 39, 53 (1968) (citations

_____

[14] The Circuit Courts have taken a range of positions with respect to the issue whether the Self-Incrimination Clause is violated by loss of eligibility for good time credits or parole based upon failure to admit either the crime of conviction or, in connection with a rehabilitation program, uncharged sexual conduct which may be criminal.  See, e.g., Searcy v. Simmons, 299 F.3d 1220 (10th Cir. 2002) (where there is no liberty interest in good time credits, loss of eligibility for good-time credits as a consequence of refusing to admit crime of conviction does not violate Self-Incrimination Clause); Ainsworth v. Stanley, 317 F.3d 1 (1st Cir. 2002), cert. denied, 538 U.S. 999 (2003) (voluntary sexual offender treatment program which requires participant to admit crime and divulge other offenses does not violate Self-Incrimination Clause, even though non-participation results in denial of parole); Vinson v. Michigan Parole Bd., No. 05-72425, 2006 WL 305653 (E.D. Mich. Feb. 9, 2006) (parole board's consideration of prisoner's refusal to accept responsibility for his crime does not violate Self-Incrimination Clause); Sullivan v. Pennsylvania Bd. of Prob. and Parole, No. 06-14J, 2006 WL 1050526 (W.D. Pa. April 20, 2006) (where there is no liberty interest in parole, no Fifth Amendment violation from adverse parole decision based upon refusal to admit to crime of conviction or other potentially criminal behavior); but see Boddie v. New York State Div. of Parole, 288 F. Supp. 2d 431 (S.D.N.Y. 2003) (Fifth Amendment does not prohibit parole authorities from drawing an adverse inference from an inmate's refusal to answer questions regarding the crime of conviction).

omitted).  Thus, "when a witness can demonstrate a fear of prosecution, which is more than fanciful or merely speculative, he has a claim of privilege that meets constitutional muster." In re Corrugated Container Antitrust Litig., 662 F.2d 875, 883 (D.C. Cir. 1981) (citing In re Folding Carton Antitrust Litig., 609 F.2d 867, 871 (7th Cir.1979)).

Here, this Court finds that Jennings' compelled self-incrimination claim is without merit because there was no "real" possibility that Jennings could be subject to future prosecution for admitting his responsibility for crimes of which he was convicted and already served time in prison.  See, e.g., Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (where double jeopardy considerations would preclude use of admission in any future prosecution, possibility of incrimination from admission that prisoner committed the crime of conviction is no more than a "remote and speculative possibility" insufficient to trigger Fifth Amendment protection); Lewis, 365 N.J. Super. at 507 (where direct appeals are exhausted, prisoner no longer has a Fifth Amendment privilege to refuse to answer questions about the crime of conviction).

Here, Jennings no longer had a Fifth Amendment privilege against answering questions about the crime of conviction for which he has already served his term of imprisonment, and was serving at the time of his SOTP.[15]  Cf. Rice v. Michigan Parole

---

[15]  While Jennings alleges that he had appealed his conviction, he does not claim that his direct appeal or a post-conviction relief proceeding was still pending when he was

Bd., No. 05-549, 2005 WL 2297463, at *4 (W.D. Mich. Sept. 21, 2005) (where no appeals or post-conviction relief proceedings remain pending, possibility of any admission to crime of conviction incriminating prisoner in the future "is no more than a remote and speculative possibility, which is insufficient to trigger the Fifth Amendment's protection against self-incrimination").  Consequently, the Court finds no merit to Jennings' claim that his right against self-incrimination was violated.

　　　With respect to his claim that his transfer to the STU was in retaliation for having filed an appeal of his conviction, the state appellate court found no merit to Jennings' argument:

> Defendant claims that he participated in therapy while incarcerated at ADTC and never refused to participate or cooperate with the treatment program.  He asserts that his treatment is essentially a punishment because he has fully attended and cooperated.  Defendant also maintains that his commitment is retaliation for appealing his conviction.
>
> None of defendant's assertions have merit.  Treatment is an essential component of the commitment.  In J.H.M., this court found that commitment under the SVPA was not unconstitutional because it serves the dual purpose of treatment and confinement.  J.H.M., supra, 367 N.J. Super. at 609.  "'The treatment program is designed to provide comprehensive treatment services and is staffed by psychologists, psychiatrists, social workers . . . and other staff members with specialized training in the assessment and treatment of sexual deviance and personality disorders.'"  Ibid.  (quoting M.G. supra, 331 N.J. Super. at 373).  Nothing presented in defendant's brief nor his appendix substantiates any of his claims.  If defendant fully cooperated, his treatment would have been more

referred for civil commitment under the SVPA.  Jennings does allege that his commitment was in retaliation for his filing of an appeal, but it would appear that his direct appeal had concluded by the time he was transferred to the STU for civil commitment proceedings.

effective and reflected by the psychologists and
psychiatrists who have the ability to influence additional
commitment.

Clearly, treatment is for defendant's own benefit as well as
to ensure the safety of the general public.  Defendant
brings forth no evidence that the Department of Corrections
or staff at the ADTC sought to "retaliate" against him for
appealing his conviction.  Whether or not defendant has
fully cooperated and participated with treatment is an
assessment that is to be made by the psychiatrists and
psychologists in assisting the court to determine whether or
not defendant should be released from his involuntary
commitment.

This Court finds that the Appellate Division's decision was
based on a reasonable determination of the facts in light of the
evidence presented in the state court civil commitment
proceeding.  Therefore, Jennings' challenge to his commitment
based on alleged retaliation is denied for lack of merit.

F.   Right to a Jury Trial

As part of his denial of due process arguments, Jennings
also contends that he was denied due process under the SVPA
because he was denied the right to a jury trial.  It does not
appear that he raised this claim in his state court proceedings.
However, this Court may deny this claim on the merits, pursuant
to 28 U.S.C. § 2254(b)(2).

It is clear that under New Jersey law, there is no right to
a jury trial in SVPA hearings.  See In re Commitment of J.H.M.,
367 N.J. Super. 599, 606-08 (App. Div. 2003), certif. denied, 179
N.J. 312 (2004)(finding that persons subject to commitment under
the SVPA are not entitled to more constitutional protections than
afforded by the statute, and noting that the SVPA statute does
not provide for jury trials).

The United States Supreme Court has not decided the issue of whether due process requires a jury trial in civil commitment proceedings.[16]  Nor has the Supreme Court determined or incorporated the Seventh Amendment right to a jury for such cases.[17]

In Poole v. Goodno, 335 F.3d 705 (8th Cir. 2003), the Court of Appeals for the Eighth Circuit pointed out that the Supreme Court has permitted states to make their own procedural rules for commitment cases.  See id. at 711 (citing Addington v. Texas, 441 U.S. 418, 431 (1979)).  The Eighth Circuit noted that, "[a]lthough the Court did not speak directly about juries in Addington, it certainly left it open to states to employ their own preferred procedures.  It ruled that a reasonable doubt standard is not required to meet the 'constitutional minimum' for

---

[16]  But see United States v. Sahhar, 917 F.2d 1197, 1206-07 (9th Cir. 1990)(due process does not provide right to jury trial in civil commitment proceedings), cert. denied, 499 U.S. 963 (1991).  Moreover, it is instructive that, in the context of federal habeas actions under 28 U.S.C. § 2254, courts have found no right to a jury trial in civil commitment proceedings.  In Poole v. Goodno, 335 F.3d 705 (8th Cir. 2003), the Court of Appeals for the Eighth Circuit recently held that because there is no "clearly established" Supreme Court law which would require a jury trial in cases dealing with civil commitment of sexual predators, a habeas petition pursuant to 28 U.S.C. § 2254 asserting such an argument must be denied.  335 F.3d at 710-711.

[17]  The Seventh Amendment to the United States Constitution states: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court in the United States, than according to the rules of the common law."  U.S. Const. amend. VII.  The Seventh Amendment right to a jury trial does not apply to state court proceedings.  See City of Monterey v. Del Monte Dunes at Monterey, 526 U.S. 687, 719 (1999).

civil commitments, and the same type of reasoning could be applied to the type of jury trial issue we face." Id. at 709.

Therefore, where there is no clearly established Supreme Court law holding that due process requires a jury trial in civil commitment proceedings or that incorporates the Seventh Amendment right to a jury trial in such cases, see Poole, 335 F.3d at 710-11, this Court concludes that there is no federal constitutional right to a jury trial in state SVP civil commitment proceedings, and Jennings' claim for relief on this ground is denied for failure to state a claim of federal constitutional deprivation.

G.   Ineffective Assistance of Counsel Claims

The right to counsel is the right to effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984). Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005), cert. denied, Jacobs v. Beard, 126 S.Ct. 479 (2005). Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering

45

all the circumstances." Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations and quotations omitted).

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance actually prejudiced his defense.  Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96.  Thus, a petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  Id. at 697; see also Jacobs, 395 F.3d at 102.

46

In this case, Jennings was afforded representation from the Public Defender's Office.  His first counsel, Elizabeth Walsh, Esq., was assigned after Petitioner's transfer to the STU and met with Petitioner only three times between November 21, 2002 and shortly before his commitment hearing of July 21, 2003.  Jennings complains that he had informed Walsh that he wanted her to investigate and interview witnesses on his behalf, but she told him it would be futile.  Counsel also had Jennings sign a waiver to postpone his final hearing to give her more time to prepare a defense.  His second counsel, John Douard, Esq., did not investigate and interview witnesses as requested by Jennings, and told Jennings that his decision was based on strategy.

Jennings raised this argument on appeal.  The Appellate Division found no merit to the claim:

> Defendant asserts that his attorney's performance was ineffective and prejudiced his ability to have a fair hearing. Defendant's attorney never raised the issue of due process and never took action after learning that the petition had been improperly filed.  Proper notice was also lacking.  Further, counsel failed to call any witnesses on defendant's behalf.  Defendant claims that if his attorney had raised the due process issues, he would not have been denied his due process rights to a probable cause hearing and would not have been subsequently committed.
>
> Defendant's argument is without merit.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed.2d 674, 693 (1984), sets forth the two-part test for analyzing ineffective assistance of counsel claims:
>
>> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair

trial, a trial whose result is reliable.  Unless a
defendant makes both showings, it cannot be said that
the conviction ... resulted from a breakdown in the
adversary process that renders the result unreliable.

Considerations as to the first prong include client loyalty,
adequate consultation, and legal proficiency.  As for the
second prong, "prejudice" must be proven.  A defendant
alleging actual ineffectiveness must show that there is "a
reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would
have been different.  A reasonable probability is a
probability sufficient to undermine confidence in the
outcome."  Id. at 694, 104 S. Ct. at 2068, 80 L. Ed.2d at
698.

Under the "Strickland-Cronic-Fritz" standard set forth in
State v. Preciose, 129 N.J. 451 463 (1992), the defendant
must first show that counsel's performance was deficient.
Second, the defendant must show that there exists "'a
reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would
have been different.'" Id. at 463-64 (quoting Strickland,
supra, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed.2d at
698).  Defendant cannot satisfy the second prong.

Defendant's due process claim of no notice and failure to be
given a probable cause hearing was a technical error and
would not have changed the outcome of the hearing.
Defendant would still have been committed.  As for defense
counsel's failure to contact any witnesses, that argument
must also fail.  Defendant's contentions constitute mere
speculation.  See State v. Fritz, 105 N.J. 42, 63-64 (1987).
Defense counsel may not have known or been able to locate
any favorable witnesses.  Rather, the record reveals that
defendant was afforded with competent counsel who was
familiar with the case and provided rigorous representation.

(RE 1, Appellate Division Op., Feb. 22, 2005, at 32-33).

Here, Petitioner has made no showing that his counsel's

performance was deficient.  Significantly, Jennings fails to

divulge what further investigation by counsel would have revealed

that would have changed the outcome of his commitment

proceedings.  He does not indicate what witnesses should have

been called.  At most, he contends that counsel should have

called the two doctors who issued the clinical certifications. Admittedly, counsel had explained to Jennings that the testimony of these doctors would have been difficult to overcome with only Petitioner's testimony to refute their clinical findings.  Thus, it was a tactical or strategic decision to forego calling these witnesses.

Moreover, even if Jennings could show that the actions (or inactions) of his counsel were deficient, he cannot satisfy the prejudice prong under <u>Strickland</u>.  Jennings does not demonstrate how the alleged actions or inactions by counsel (<u>i.e.</u>, for example, the failure to have a probable cause hearing) would have changed the outcome of his final commitment hearing.  The Appellate Division found that Petitioner would still have been committed at the final hearing based on the testimony of the doctors and the documentary evidence.

Consequently, Jennings has not established a constitutional violation.  Nor has he shown, as required under 28 U.S.C. § 2254(d), that the actions of the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court in <u>Strickland</u>, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, this ineffective assistance of trial counsel claim for habeas relief is denied.

Jennings also contends that his appellate counsel was ineffective.  The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right.  Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004).  Appellate counsel does not have a duty to advance every non-frivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Here, Jennings states that his appellate counsel never met with him to discuss what claims should have been raised.  His appeal was denied and counsel then missed the filing deadline for his petition for certification to the New Jersey Supreme Court.

As a result, Jennings had to file a pro se petition, which was denied.

Jennings did not raise this claim before the state courts before proceeding with this Petition.  However, as there is no merit to his claim, the Court will deny Jennings' ineffective assistance of appellate counsel claim pursuant to 28 U.S.C. § 2254(b)(2).

The state court record shows that Jennings' appellate counsel prepared a very thorough brief on Petitioner's behalf. Jennings then submitted a supplemental pro se brief asserting several additional claims, namely ineffective assistance of trial counsel and violations of the Double Jeopardy and Ex Post Facto Clauses.  He also expounded further on his denial of due process claim regarding his selection and transfer to the STU.  All of Petitioner's supplemental arguments were reviewed and rejected by the Appellate Division.  Thus, even if appellate counsel's failure to include Jennings arguments in the initial preparation of the appeal is found to constitute deficient performance, the claim fails nevertheless because Jennings cannot demonstrate prejudice.[18]  Accordingly, this claim is denied for lack of merit.

---

[18]  Furthermore, even if appellate counsel was deficient because he did not timely file a petition for certification with the New Jersey Supreme Court, there is no constitutional deprivation because no prejudice resulted.  Jennings filed a petition for certification, which was considered by the New Jersey Supreme Court and denied by Order filed on July 11, 2005.

H.  Petitioner Received A Fair Commitment Hearing

        Finally, Jennings argues, in Ground Seven of his Petition,
that he was denied a fair civil commitment hearing.  In support
of this claim, Jennings again contends that the late notice and
lack of a probable cause hearing violated his right to due
process.  This claim has already been reviewed and rejected by
the Court in this Opinion, supra, at 25-32.  However, Jennings
also argues that he was denied a fair hearing because the state
court allowed inadmissible hearsay and transcripts not placed in
evidence.  He further states that the state court should not have
allowed Dr. McAllister to testify concerning his observance of
Petitioner during a motion proceeding, and that the state court
impermissibly curtailed defense cross-examination of the state's
expert witnesses.

        These claims were raised on direct appeal and the Appellate
Division rejected them for lack of merit.  With respect to Dr.
McAllister's testimony, the Appellate Division ruled as follows:

> The reports relied upon by Dr. McAllister and dr. Carlson
> were based on the work product of those who treated
> defendant.  This is not a case "where the non-testifying
> experts simply rendered a forensic opinion based on records
> and a brief interview with [defendant]." [In re Commitment
> of E.S.T., 371 N.J. Super. 562, 573 (App. Div. 2004)].
> Rather, the work product constituted notes made while
> defendant was undergoing treatment during his imprisonment
> at the ADTC.  Additionally, defendant was observed by both
> doctors during the pretrial motions, despite defendant's
> refusal to cooperate and submit to an interview.
>
> Defendant refused to cooperate with any attempts for an
> evaluation requiring the doctors to rely on other sources to
> render their opinions.  See Bender v. New Jersey Dep't of
> Corrections, 356 N.J. Super. 432 (App. Div. 2003)(holding
> that an inmate could not avoid participating in and
> cooperating with an otherwise non-incriminatory treatment

52

> program simply because he asserted a claim of privilege);
> State v. Logan, 244 N.J. Super. 137 (Law Div. 1990)(holding
> that the defendant waived his due process rights by defying
> a court order that he submit to psychiatric and physical
> examination and refusing to cooperate with any aspect of the
> evaluation or hearing), aff'd, 262 N.J. Super. 128 (App.
> Div.), certif. denied, 133 N.J. 446 (1993).
>
> The doctors also relied on the trial transcript regarding
> the predicate offense and Judge Arnold's finding that the
> allegations of A.R. and R.R. as to the sexual assaults
> perpetrated upon them by B.L.J. were proved by clear and
> convincing evidence.
>
> Further, the court did, in fact, make a determination that
> the information relied upon by Dr. McAllister and Dr.
> Carlson was of the type that was relied upon by other
> experts in the filed for purposes of N.J.R.E. 703.  Judge
> Perretti did not assume that the documents relied upon by
> the doctors were reliable.  A review of the transcript
> reveals that Judge Perretti inquired as to both doctors
> whether the information which they relied upon was the type
> of information that was used by other experts in the field.
> Additionally, all of the documents utilized by the
> testifying witnesses were provided to counsel for B.L.J.
> shortly after his temporary commitment to the STU.  There
> was no abuse of discretion in Judge Perretti's evidential
> rulings.

(RE 1, February 22, 2005 Appellate Division Op. at 21-23).  The

Appellate Division also rejected Jennings' claim that defense

counsel's cross-examination was restricted.  In reviewing the

state court transcripts, the Appellate Division found:

> Defendant's counsel had ample opportunity to cross-examine
> Dr. Carlson.  The index of the transcript indicates that
> defendant's counsel cross-examined Dr. Carlson for
> approximately thirty-one pages.  In addition, defendant's
> attorney was given the opportunity to re-cross-examine Dr.
> Carlson for an additional seven pages.  During this time,
> counsel inquired about a variety of issues.  Judge Perretti
> simply attempted to facilitate the hearing by removing any
> testimony that was either cumulative or irrelevant.
> Defendant's suggestion that his attorney was given
> inadequate opportunity or hampered by Judge Perretti simply
> fails.  It is well within her discretion to ask defense
> counsel to move on with his cross-examination.

Similarly, Judge Perretti found defense counsel's questions regarding paraphilia N.O.S. and that defendant had one conviction to be argumentative in nature.  Defense counsel was given the opportunity to raise his concerns during summation.

(Id. at 24-25).

Finally, with respect to Jennings' arguments that inadmissible hearsay and transcripts were wrongly admitted into evidence, the Appellate Division held that N.J.R.E. 803(c)(22) allowed for the admission of a judgment of a previous conviction for a crime because the conviction itself is admissible as proof of the facts underlying that conviction.  Similarly, a pre-sentence investigation report is admissible, and evaluating psychologists and psychiatrists are entitled to rely on pre-sentence reports, police reports, and past psychological and psychiatric notes and evaluations pursuant to N.J.R.E. 404(b). The court further observed that an expert is allowed to rely on hearsay information in forming an opinion as to the Petitioner's mental state, and that such testimony is admissible if it is of the type that experts in the relevant field of practice rely on in reaching their conclusions.  (Id. at 17-21).

Generally, issues as to the admissibility of evidence, as asserted by Jennings here, are questions of state law and not subject for federal habeas review.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Federal courts must afford the states deference in its determinations regarding

evidence and procedure.  See Crane v. Kentucky, 476 U.S. 683, 690

(1986).  It is well-established that

> a state court's misapplication of its own law does not
> generally raise a constitutional claim.  The federal courts
> have no supervisory authority over state judicial
> proceedings and may intervene only to correct wrongs of
> constitutional dimension.

Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations

omitted), cert. denied, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when

the petitioner "was denied fundamental fairness at trial."

Hutchins v. Hundley, No. 31-818, 1991 WL 167036, at *4 (D.N.J.

Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis

v. Beyer, 19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S.

881 (1994).

The appropriate inquiry is "whether the claimed error of law

is a fundamental defect which inherently results in a complete

miscarriage of justice or in an omission inconsistent with the

rudimentary demands of fair procedure."  Hutchins, 1991 WL

167036, at *4 (citing United States v. De Luca, 889 F.2d 503, 506

(3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other

citations omitted).  The Supreme Court has further stated that

"an otherwise valid conviction should not be set aside if the

reviewing court may confidently say on the whole record that the

constitutional error was harmless beyond a reasonable doubt."

Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is

not harmless if "it aborts the basic trial process or denies it

altogether." <u>Hutchins</u>, 1991 WL 167036, at *5 (citing <u>Rose v. Clark</u>, 478 U.S. 570, 578 n.6 (1986)).

Here, this Court finds that the admission of transcripts and hearsay testimony was permissible under state law and state rules of evidence, and did not amount to an error of constitutional rulings allowed the admission of any improper evidence. Further, Jennings has not demonstrated, as required under 28 U.S.C. § 2254(d), that the actions of the state court in this regard resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts. Therefore, this claim that Petitioner was denied a fair civil commitment hearing is denied for lack of merit and for failure to state a claim of a federal constitutional deprivation.

### III.   <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue. <u>See</u> Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

IV.   <u>CONCLUSION</u>

For the above reasons, this Court denies Jennings' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the merits and declines to issue a certificate of appealability.   An appropriate Order accompanies this opinion.


<u>/s/ Jose L. Linares</u>
United States District Judge

DATED: May 2, 2008